UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>ION</small> J. B<small>ROWN</small>,

        Plaintiff,                Hon. Robert J. Jonker

v.

                                    Case No. 1:23-cv-1200-RJJ-PJG

US X<small>PRESS</small>, I<small>NC</small>.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's motion to compel arbitration. (ECF No. 10). Plaintiff opposes the motion. (ECF No. 18). The undersigned judicial officer conducted a hearing on this matter at which Plaintiff and counsel for Defendant appeared. (Minutes, ECF No. 16). Having considered the parties' oral and written submissions, and for the reasons articulated herein, the undersigned recommends that Defendant's motion be granted and this matter be dismissed.

**Factual and Procedural Background**

On November 13, 2023, Plaintiff filed a complaint, claiming that Defendant violated the Fair Credit Reporting Act and tortiously interfered with his employment. (ECF No. 1). Plaintiff alleges that Defendant, his former employer, falsely reported that he had been involved in an accident with one of its trucks. Plaintiff is seeking lost wages as well as equitable relief. (*Id.* at PageID.4).

Defendant U.S. Express is an asset-based trucking company based in Chattanooga, Tennessee, that provides transportation services throughout the

United States. (Michael Paul Decl. at ¶ 4, ECF No. 14, PageID.78).[1] Variant is an internal business division of U.S. Xpress and has no separate corporate existence. (*Id.* at ¶ 7).

Defendant has a mandatory employment arbitration program, which is called "Xpress Resolution Program and Rules for Arbitration" (Arbitration Program). (*Id.* at ¶ 5, PageID.78). The Arbitration Program requires that all "Legal Dispute[s]" between it and its employees " 'be resolved exclusively through final and binding arbitration rather than before a judge or jury in court or before an administrative adjudicative body.' " (*Id.* at ¶ 9, PageID.79 (quoting Arbitration Program Agreement)). The Arbitration Program defines "Legal Dispute" as follows:

> any dispute between a Participant and the Company that involves any legal or equitable claim, regardless of when the events on which it is based occurred, including events before or after a Participant's employment and events before a Participant became subject to this Program (unless such Legal Dispute was already asserted in a court or before an administrative adjudicative body).

(Paul Decl., Attachment A, Arbitration Program Agreement, Definitions, ¶ 2(9), PageID.82).[2] A "Participant" is "an individual who has agreed to the [Arbitration] Program." (*Id.* at ¶ 2(13)). The term "Company" includes Variant and its parent U.S. Xpress. (*Id.* at ¶ 2(5)). Employees who work in the Variant division are

---

[1] Michael Paul has served for eleven years as U.S. Xpress' Vice President, Talent Management for the Human Resources Department. (Michael Paul Decl. ¶ 2, ECF No. 14, PageID.77).

[2] The definition of "Legal Dispute" includes a number of exceptions (*see* Paul Decl., Attachment A, Arbitration Program Agreement, Definitions, ¶ 2(9), PageID.82), none of which is at issue in this case.

"formally employed" by U.S. Xpress; they receive their pay from U.S. Xpress; and they are subject to the Arbitration Program. (Paul Decl. at ¶ 8, PageID.78).

Plaintiff applied for a job with the Variant division of U.S. Xpress on July 11, 2022, through an internet-based third-party platform. (*Id.* at ¶ 6). On that day, he executed and electronically submitted the Arbitration Program Agreement. (*Id.* at ¶ 9). He signed the agreement "by drawing a digital signature and providing his social security number." (*Id.*; *see* ECF No. 14, PageID.86). Plaintiff worked for Defendant's Variant division as a commercial truck driver from July 27, 2022, until he quit on November 12, 2022. (Paul Decl. at ¶ 17, PageID.80).

Relying on the Arbitration Program Agreement, Defendant filed a motion on December 13, 2023, seeking an order compelling Plaintiff to submit the instant claims to arbitration and either dismissing the instant claims or staying this case pending the arbitration process.³ (ECF No. 10). Plaintiff failed to respond to the motion, so the Court conducted a hearing on January 9, 2024, at which Plaintiff and Defendant's counsel appeared. (Minutes, ECF No. 16). During the hearing, the Court gave Plaintiff another opportunity to file a response to the motion, setting January 23, 2024, as the deadline for that response. (*See* Order, ECF No. 17). The Court explicitly noted that "[a]ny issue not addressed in that response may be deemed waived." (*Id.* at PageID.93). Plaintiff filed a response in opposition to the motion

---

³ Defendant cites no rule, nor does it state a specific basis for its motion to dismiss. As noted below, the undersigned judicial officer recommends dismissal for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

on February 1, 2024, nine days late. (ECF No. 18). Defendant filed its reply on February 14, 2024. (ECF No. 19).

## Analysis

At the outset, the undersigned judicial officer notes that the Arbitration Program Agreement contains a venue provision by which the parties agreed to arbitrate their legal disputes in Hamilton County, Tennessee. (Paul Decl., Attachment A, Arbitration Program Agreement at ¶ 13(1), PageID.84). Accordingly, if the Court finds the Arbitration Program Agreement enforceable, it should dismiss the complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Big City Small World Bakery Café, LLC v. Francis David Corp.*, 265 F. Supp.3d 750, 757 (E.D. Mich. 2017) (" 'An arbitration clause is a type of forum-selection clause. Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1).' " (quoting *Grasty v. Colorado Tech. University*, 599 F. App'x 596, 597 (7th Cir. 2015)); *see also Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp.3d 882, 887 (N.D. Ill. 2019) ("Under Section 4 [of the FAA], 'where an arbitration agreement contains a forum selection clause, only the district in that forum can issue a § 4 order compelling arbitration.' " (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995)).

The Supreme Court has recognized that, under federal law, there is a "healthy regard" for arbitration agreements, and that the Federal Arbitration Act (FAA)

"establishes that . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Cooper v. MRM Investment Co.*, 367 F.3d 493, 498 (6th Cir. 2004) ("The FAA expresses a strong public policy favoring arbitration of a wide class of disputes.").  This reflects that Congress' purpose in enacting the FAA was to ensure the enforcement of arbitration agreements into which parties had entered.  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985)).  The FAA "requires federal courts to place arbitration agreements upon the same footing as other contracts."  *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (internal quotations omitted).  "Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA."  *Volt*, 489 U.S. at 479.

The Arbitration Program Agreement contains a choice of law provision for "transportation worker[s]," including "over-the-road driver[s]," which requires the application of the Tennessee Uniform Arbitration Act (TUAA).  (Arbitration Program Agreement at ¶ 13, Paul Decl. Attachment A, PageID.84).  The agreement also provides that, "[w]here not expressly inconsistent, the TUAA shall be interpreted in a manner consistent with the Federal Arbitration Act (FAA)."  (*Id.*).

Like federal law, Tennessee law generally favors arbitration agreements. *See Benton v. Vanderbilt Univ.,* 137 S.W.3d 614, 617-18 (Tenn. 2004); *Buraczynski v. Eyring,* 919 S.W.2d 314, 317 (Tenn. 1996). The TUAA was adopted "(1) to promote private settlement of disputes, and (2) to ensure the enforceability of private agreements to arbitrate." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 603 (Tenn. 2013).

"Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Under Tennessee law, a valid contract requires "mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and must not be contrary to public policy." *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 865 (Tenn. Ct. App. 2002). "In the typical case, assent to a contract is shown by the signature of the parties." *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, Case No. E2004-00620, 2005 WL 1277850, at *8 (Tenn. Ct. App. May 31, 2006).

The Arbitration Program Agreement is a valid contract. In exchange for applying for a job with the Variant division of U.S. Xpress on July 11, 2022, Plaintiff was required to agree to the company's mandatory Arbitration Program. That Plaintiff agreed to be bound to that program is evidenced by his digital signature and social security number on the five-page Arbitration Program Agreement, which

sets out in plain language the terms to which he assented. (*See* ECF No. 14, PageID.86). Plaintiff does not dispute that he signed the agreement.[4]

Plaintiff's claims in the instant complaint fall within the scope of the Arbitration Program Agreement. That agreement requires arbitration of any "legal dispute," which is defined broadly to include "any dispute . . . that involves any legal or equitable claim, regardless of when the events on which it is based occurred. (Arbitration Program Agreement at ¶ 9, ECF No. 14, PageID.82). "Tennessee courts construe arbitration agreements broadly in favor of arbitration and routinely uphold and enforce arbitration agreements." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn. Ct. App. 2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25.[5]

In order to avoid the consequences of entering into the Arbitration Program Agreement, Plaintiff bears the burden of demonstrating that it is unenforceable under contract law or equity. *See, e.g., Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79, 81 (2000). In shotgun fashion, Plaintiff raises various points of contention regarding the enforceability of the agreement. Many are

---

[4] Plaintiff only contends that he "does not recall" signing the form entitled "Application Forms Explained" (ECF No. 18, PageID.96), which is a separate document from the agreement itself. (*Cf.* Paul Decl. Attachment A, ECF No. 14, PageID.82-85, with *id.*, Attachment B, PageID.87-90).

[5] The Fair Credit Reporting Act is an arbitrable claim. *See Burton v. Equifax Information Servs., LLC*, Case No. 1:21-cv-0233, 2021 WL 5500773, at *3 (E.D. Tenn. Nov. 22, 2021).

obviously inapposite and are stated in the most conclusory fashion. Accordingly, they need not be addressed by the Court. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoted citation omitted)).

Giving him the benefit of the doubt, Plaintiff arguably raised a number of issues that warrant some analysis here. None of these meet his burden of demonstrating that the Arbitration Program Agreement is unenforceable.

Plaintiff contends that he did not work for – nor did he apply to work for – the Variant division of U.S. Xpress, but rather, for U.S. Xpress itself. (ECF No. 18, PageID.96). This contention is both irrelevant and refuted by the record evidence. It is irrelevant because the agreement Plaintiff signed explicitly states that it includes Variant division's parent, U.S. Xpress. (*See* Arbitration Program Agreement, Definitions, at ¶ 2(5), ECF No. 14, PageID.82). There is no legal distinction between U.S. Xpress and its Variant division. Plaintiff's claim that he did not work for, nor apply to work for, Variant is also belied by the documents he signed at the time he submitted his employment application. The Arbitration Program Agreement Plaintiff signed has the name "Variant" in large letters with the division's logo at the top. (*Id.* at PageID.82). The very first sentence in the agreement states: "The Xpress Resolution Program is designed to provide quick, fair, and inexpensive resolution of disputes **among Variant, a division of U.S.**

**Xpress** and its applicants and employees." (*Id.* at ¶ 1, PageID.82) (emphasis supplied). Further, in the language just above Plaintiff's signature, the agreement states:

> "**I have applied to be considered for employment** or have changed positions **with Variant, a division of U.S. Xpress ("Variant")**. I understand my application, or any offer of employment or continued employment by Variant, is contingent on my agreement to be bound by the terms and conditions of Variant's alternative dispute program known as Xpress Resolution Program and Rules for Arbitration (the "Program").

(*Id.* at PageID.85) (emphasis supplied). Plaintiff's contention to the contrary is implausible.

Plaintiff also contends that the agreement is unconscionable. (ECF No. 18, PageID.97-99). Specifically, he argues that the choice of law provision is beyond the "average citizen's" ability to understand, and that he did not understand that he was giving up his right to be "exempt."[6] (*Id.* at PageID.97-98). Plaintiff's failure to carefully read, or even his failure to understand the terms of an agreement he freely signed is not grounds to invalidate the agreement. *See Anderson v. Amazon.com, Inc.*, 478 F. Supp.3d 683, 698 (M.D. Tenn. 2020) (applying Tennessee law); *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007); *see also Montgomery v. Fidelity & Guaranty Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005) ("It is well established that failure to read an agreement is not a valid

---

[6] It appears that Plaintiff is contending that he should have been exempt from arbitration as a "transportation worker" under the FAA. (*See* ECF No. 18, PageID.98). But this contention ignores the fact that he agreed to have Tennessee law apply to the Arbitration Program Agreement.

defense of enforcement of a contract.   A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." (citations omitted)).

Moreover, the Arbitration Program Agreement was sufficiently clear to any person with at least average intelligence concerning the essential nature of the agreement – that Variant's transportation workers were giving up their rights to bring "legal disputes" against the company in a court of law, and that they must submit any such dispute to binding arbitration.   Three sentences before Plaintiff's signature included the following statement: "**In particular, and without limitation, I confirm my understanding and agreement that work disputes in which I am involved that fall within the Program's definition of "Legal Dispute" will be resolved exclusively through final and binding arbitration rather than before a judge or jury in court or before an administrative adjudicative body.**"   (Arbitration Program Agreement, ECF No. 14, PageID.85-86) (emphasis in original).

By contending that he was given a "take-it-or-leave-it" offer with no "meaningful" alternative to signing the Arbitration Program Agreement (ECF No. 18, PageID.98-99), Plaintiff is essentially challenging the agreement as one of adhesion.   Under Tennessee law, a contract of adhesion is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service

-10-

except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). But "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 500 (6th Cir. 2004). Plaintiff must demonstrate that his refusal to sign the agreement would have caused him some detriment other than not being able to work for the Variant division of U.S. Xpress, and he must establish this fact with specific evidence. *See id.* at 502-03. As Plaintiff has offered no evidence that he would have been unable to find suitable employment if he refused to sign Variant's agreement, he has failed to meet his burden. *See id.*

Even if Plaintiff had established that this was a contract of adhesion, to avoid arbitration he would have also had to demonstrate that the Arbitration Program Agreement is unconscionable, either procedurally or substantively. *See Cooper*, 367 F.3d at 503. Under Tennessee law, this is essentially a determination as to whether " 'the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.' " *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). While the Court need not address this latter requirement, given Plaintiff's failure to demonstrate that the Arbitration Program Agreement is adhesive, the undersigned can find no basis upon which to make such a finding, and Plaintiff has failed in his

burden of establishing it. *Cf. Cooper*, 367 F.3d at 502 (noting that, "as a general matter, employers often condition employment on a commitment to arbitration").

At least two courts have upheld the U.S. Xpress Arbitration Agreement at issue here. *See Blocker v. U.S. Express Enterprises, Inc.* Case No. 20-cv-1633, 2021 WL 825610, at *4 (N.D. Ill. Mar. 4, 2021); *Morel v. U.S. Xpress, Inc.*, Case No. 20-1348, 2020 WL 7318081, at *7-8 (E.D. La. Dec. 11, 2020). The undersigned sees no reason for this Court to deviate from those holdings.

## Conclusion

For the foregoing reasons, the undersigned judicial officer recommends that Defendants' motion to compel arbitration be treated as a motion to dismiss for lack of venue under Rule 12(b)(3), that it be granted, and that the case be dismissed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. ' 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                Respectfully submitted,

Date: May 6, 2024         /s/ Phillip J. Green
                PHILLIP J. GREEN
                United States Magistrate Judge